UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MAXIMO CASTRO,** | Civil Action No. 18-11833 (FLW) |
| Petitioner, | |
| v. | OPINION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

This matter has been opened to the Court by Petitioner Maximo Castro's ("Castro" or "Petitioner") filing of a motion to vacate, correct, or set aside sentence pursuant to 28 U.S.C. § 2255 ("Motion"). For the reasons explained in this Opinion, the Court denies the Motion and also denies a certificate of appealability.

I.  **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

On or about July 15, 2011, a federal Grand Jury sitting in Newark, New Jersey, returned a two-count Indictment (the "Indictment"), Crim. No. 11-492 (FLW), against petitioner Maximo Castro, a/k/a "Carl Worthington." *United States v. Castro*, Crim. No 11-492, Dkt. No. 8. Count One of the Indictment charged Castro with armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a), 2113(d) and 2, and alleged that Castro robbed the TD Bank branch located at 4200 Park Avenue in Weehawken, New Jersey (the "Bank"), whose deposits were then insured by the Federal Deposit Insurance Corporation ("FDIC"), on or about May 31, 2011, in Hudson County, in the District of New Jersey and elsewhere. Count Two of the Indictment charged that Castro knowingly used, carried, and in furtherance of such crime,

1

possessed a firearm in furtherance of a crime of violence, namely, the bank robbery, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

The trial in this matter began on December 12, 2011. On December 20, 2011, prior to the completion of the trial, the Court held an *ex parte* hearing with Castro and defense counsel,[1] outside the presence of the government. *See* Exhibit 1, Transcript of December 20, 2011 Ex Parte Hearing. During that hearing, defense counsel asked to withdraw from the representation based on what [counsel believed Castro would] testify to on his own behalf in th[e] trial." Exhibit 1 at 4:12-14. Defense counsel stated that she had "a firm factual basis that [Castro's] testimony may include portions of testimony that we are not ethically permitted to elicit." *Id.* at 4:17-19. Defense counsel further stated that counsel had a firm factual basis to believe counsel could not ethically elicit the testimony Castro was prepared to give "based upon information he has given us, combined with the investigation we have done in this case." *Id.* at 5:4-8.

During the hearing, the Court questioned Castro regarding his intent to testify to information that defense counsel did not believe they could elicit, his understanding that providing false testimony could result in a prosecution for perjury, and his understanding as to why new counsel could not be appointed to elicit potentially perjurious testimony. *Id.* at 6-9.

The Court further inquired as to whether Castro was seeking to proceed *pro se* and deliver his testimony and own closing argument. *Id.* at 9:17-25. Castro indicated that he was seeking to proceed *pro se* with the assistance of defense counsel as standby counsel. *Id.* The Court then made the following findings in determining the appropriate course of action on this case:

> I am satisfied that defense counsel has at this point that firm factual belief and that they have not taken this lightly, and also, based on

---

[1] Petitioner was represented at trial by Lisa M. Mack, Esquire, and David E. Schafer, Esquire.

> the responses of counsel and the defendant, understand that they have advised Mr. Castro to not testify into certain areas so that they continue the representation, but despite trying to persuade him from doing so, he wishes to proceed and to testify fully in the manners that he thinks are appropriate and has indicated that he would wish at this point to proceed on his own to do so, as well as to provide a closing argument, because counsel, again, would be limited from in any way referencing any testimony they believe to be false in a final argument. Mr. Castro also indicated, however, though, that he would like, essentially, counsel to assist or be standby on any of the legal matters. I believe that is one of the things I can do in this matter to limit any prejudice to the defendant in exercising his constitutional right to testify, and I believe in that regard counsel could remain available at counsel table to make any legal objections.

*Id.* at 11-12.

In order to minimize any prejudice with the jury, the Court also proposed the following:

> I also propose that to minimize the prejudice to Mr. Castro as to what the jury might think or the government at this point, that the manner in which I would proceed is to inform the government and the jury that Mr. Castro has determined, as is his total right, that he would like to present his testimony and closing arguments on his own, that counsel is remaining in the case to assist him on all legal matters otherwise, and those would be the only items to remain because you are going to put on the other witnesses that may be here.
>
> . . . .
>
> That would minimize the prejudice because it would look like he's exercising his right to present his own testimony and make his arguments to the jury in his own manner. So I would propose to do it in that manner. No one will realize you are withdrawing because you are not actually out of the case; you are assisting. You will not, however, be representing him in connection with his testimony and his closing.

*Id.* at 14.

Prior to Castro's testimony at trial, the Court gave the following brief explanation to the jury regarding Castro's decision to present his testimony and the closing:

> Mr. Castro has elected, as is his right, to present his testimony himself, and he also is going to end up closing to the jury. He will be assisted by counsel for all legal matters and continue in that

3

>way, but he is going to proceed on his own with regard to his
>testimony and his closing.

*See* Exhibit 2, Transcript of December 20, 2011 Trial at 8-13. Castro delivered his direct narrative testimony and his own closing argument. The trial completed on December 22, 2011, and the jury returned a verdict of guilty on both counts charged in the Indictment.

After entering a sentencing agreement with Castro and his new post-trial counsel, this Court held a sentencing hearing on April 3, 2013. The Court sentenced Castro to 150 months' imprisonment on count one and 60 months' imprisonment on count two, to run consecutively, for a total of 210 months' imprisonment.

Petitioner filed the instant motion for relief pursuant to 28 U.S.C. § 2255 on or about July 19, 2018, asserting that he is entitled to relief under the new rule announced in *McCoy v. Louisiana*, 138 S.Ct. 1500 (2018).

## II. ANALYSIS

A motion for relief pursuant to 28 U.S.C. § 2255 is time-barred unless it is filed within one year of the date on which the judgment of conviction became final. 28 U.S.C. § 2255(f)(1). Castro relies upon the exception contained in 28 U.S.C. § 2255(f)(3) to justify the filing of his motion for relief on June 19, 2018. Subsection (f)(3) permits the one-year limitation period to run from "the date on which the right asserted [in the motion] was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *See id.*

Petitioner challenges his convictions on the ground that, in light of the United States Supreme Court's decision in *McCoy*, his autonomy was violated when defense counsel withdrew from representing him towards the end of trial and Castro proceeded pro se and delivered a narrative direct testimony and his own closing argument. *See Maximo Castro v. United States*,

Civ. No. 18-11833, ECF No. 5, at 3-4 (hereinafter "Petitioner's Brief"). Petitioner argues that the holding in *McCoy* created a "new and substantive right which was not available until May 14, 2018," that is, a right that "guarantees and protects the right of a criminal defendant to: 'decide on the objective of his defense.'" *Id.* at 4.

The government argues that Castro's claim is time-barred and meritless. Specifically, the government argues that Castro's instant motion under § 2255 is time-barred because Castro was sentenced on April 3, 2013, and any motion pursuant to § 2255 should have been filed within one year of the date on which his judgment of conviction became final. *See* 28 U.S.C. § 2255(f)(1). The government further argues that Petitioner does not sufficiently rely on the rule announced in *McCoy*; as such, the time period within which Castro could file a § 2255 motion was not extended to allow him to file the motion within one year of the *McCoy* decision. *See* 28 U.S.C. § 2255(f)(3).

In *McCoy*, the Supreme Court held that the Sixth Amendment demands that a defendant must have the autotomy to decide whether the objective of their defense is to assert innocence or admit guilt, 138 S. Ct. at 1505, 1508, and concluded that it was unconstitutional for defense counsel to concede guilt over the defendant's "intransigent and unambiguous objection." *Id.* at 1507, 1512. There, the defendant, Robert McCoy, was charged with three counts of first-degree murder and faced the death penalty. 138 S. Ct. at 1506. McCoy's attorney, Larry English, believed the evidence against his client was "overwhelming," and thus decided the best course of action was to concede that McCoy murdered the victims to try to avoid a death sentence. *Id.* Before and during trial, however, McCoy vehemently protested this strategy both to English in private and the court on the record. *Id.*

At a hearing two days before trial, McCoy attempted to fire English as his attorney in part because English tried to convince McCoy to "cop out to three counts of first[-]degree murder." At this hearing, English asked to be relieved as McCoy's attorney because he and McCoy had "an irrevocable disagreement between how to proceed in this case." The court denied their requests to sever the attorney-client relationship. *McCoy*, 138 S. Ct. at 1506. At trial, during English's opening statement -- but not in earshot of the jury -- McCoy again voiced his disapproval of English's representation to the court after English told the jury "McCoy was the cause of these individuals' death [sic]." *Id.* The judge, however, permitted McCoy's attorney to concede that McCoy caused the deaths of the three individuals, and McCoy was ultimately convicted on all three counts of first-degree murder and sentenced to death. *Id.* at 1507.

The Louisiana Supreme Court affirmed the trial court's ruling that defense counsel had authority to concede McCoy's guilt, despite the defendant's opposition to any admission of guilt, because counsel reasonably believed that admitting guilt afforded McCoy the best chance to avoid a death sentence. Moreover, the Louisiana Supreme Court concluded that English's refusal to maintain McCoy's innocence was necessitated by Louisiana Rule of Professional Conduct 1.2(d) (2017), which provides that "[a] lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent." *Id.* at 1507 (citation omitted).

The United States Supreme Court granted certiorari, reversed, and ordered a new trial. *Id.* at 1512. The Court held that the Sixth Amendment to the federal Constitution guaranteed the right of a competent defendant to assert that he or she was innocent: "We hold that a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's [experience-based] view is that confessing guilt offers the defendant the best chance to avoid the death

6

penalty."[2] *Id.* at 1505 ("[I]t is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt.").

Here, as noted above, Petitioner's motion is untimely unless he can rely on § 2255(f)(3) to reset the time within which he can file his motion for relief. That subsection permits the one-year limitation period to run from "the date on which the right asserted [in the motion] was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *See id.*

Even if Petitioner's claim could survive the retroactivity analysis under *Teague v. Lane*, 489 U.S. 288 (1989),[3] *McCoy* presents materially different facts and does not govern Petitioner's

---

[2] Because the defendant's autonomy, not counsel's competence, is in issue, the Supreme Court did not apply the ineffective-assistance-of-counsel jurisprudence, *Strickland v. Washington*, 466 U.S. 668 (1984), or *United States v. Cronic*, 466 U.S. 648 (1984), to McCoy's claim. *See McCoy*, 138 S. Ct. at 1510–11.

[3] The Court is doubtful that *McCoy* has complete retroactive effect. *See Teague v. Lane*, 489 U.S. 288, 301 (1989). Under *Teague*, a new rule imposed by the Supreme Court is generally not to be applied retroactively to criminal cases on collateral review. 489 U.S. at 310 (holding "new ... rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced"). The two exceptions to this prohibition are: (1) new rules that are substantive; or (2) new "watershed rule[s] of criminal procedure." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (citation omitted). "A rule is substantive ... if it alters the range of conduct or the class of persons that the law punishes." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). "In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural." *Id.* And a rule is a "watershed rule of criminal procedure" if it "implicat[es] the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 352 (citation and quotation marks omitted). The Supreme Court has explained that this latter class of rules "is extremely narrow." *Id.* A new rule of procedure that "merely raise[s] the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise" is not enough to constitute a "watershed" procedural rule and generally does not apply retroactively to cases on collateral review. *Id.* At least two circuit courts recently determined that *McCoy* is not retroactive on collateral review. *See Smith v. Stein*, 982 F.3d 229, 235 (4th Cir. 2020) ("[W]e hold that the rule announced in *McCoy v. Louisiana*, ––– U.S. –––, 138 S. Ct. 1500, 200 L.Ed.2d 821, is not retroactively applicable on collateral review); *Christian v. Thomas*, 982 F.3d 1215, 1225 (9th Cir. 2020) (*McCoy* is not retroactive on collateral review). Moreover, this past term, the Supreme Court cast doubt on whether any new procedural rules

7

case. In order to rely on the rule announced in *McCoy*, Petitioner must show, at the very least, that his counsel conceded to his guilt at trial over his objections. *See Christian v. Thomas*, 982 F.3d 1215, 1225 (9th Cir. 2020) (finding that petitioner did not sufficiently rely on *McCoy* where petitioner's counsel presented to the jury an alternative theory of self-defense over petitioner objection but continued to maintain petitioner's innocence); *see also See United States v. Wilson*, 960 F.3d 136, 144 (3d Cir. 2020) (explaining that *McCoy* distinguished counsel's concession of factual guilt over defendant's objection from counsel's strategic decision to concede an element of a charged offense, and finding that only the former amounts to a structural error); *United States v. Rosemond*, 958 F.3d 111, 123 (2d Cir. 2020) ("[W]e read McCoy as limited to a defendant preventing his attorney from admitting he is guilty of the crime with which he is charged."). Indeed, the right announced in *McCoy* may be even narrower and confined to death penalty cases. *See McCoy*, 138 S.Ct. at 1514 (J. Alito dissenting) ("the right that the Court has discovered is effectively confined to capital cases").

Petitioner cannot make the lesser showing that his counsel denied him autonomy by effectively conceding his guilt to the jury over his objection. Instead, Petitioner argues more amorphously that there was a violation of his Sixth Amendment right to counsel and his right to autonomy when defense counsel attempted to withdraw from the representation, and he was "forced to proceed with no legal representation whatsoever." Petitioner's Brief at 2. Castro

---

could meet this test in determining that the jury-unanimity rule announced last term in *Ramos v. Louisiana*, 140 S. Ct. 1390, 206 L.Ed.2d 583 (2020), does not apply retroactively on federal collateral review. *See Edwards v. Vannoy*, 141 S.Ct. 1547, 1551–52 (2021) ("Indeed, in the 32 years since *Teague* . . ., this Court has announced many important new rules of criminal procedure. But the Court has not applied any of those new rules retroactively on federal collateral review.").

insists that a mistrial should have been declared and the "genesis" of all that transpired constituted a usurpation of Castro's autonomy. *Id.* In his Traverse, Petitioner appears to argue that his counsel's refusal to elicit his testimony and provide the closing violates *McCoy*. Petitioner's Traverse at 5.

The Court disagrees. Review of the December 20 *ex parte* hearing transcript makes clear that the Court went to great lengths to protect Castro's autonomy to assert his innocence to the jury as well as his Sixth Amendment right to counsel. During the *ex parte* hearing with the Court, defense counsel asked to withdraw from the representation because they believed they could not, pursuant to the Rules of Professional Conduct, elicit testimony they believed was going to be false. *See* Exhibit 1 at 4-5. In this scenario, to avoid usurping Castro's autonomy and control over his decision to testify on his own behalf, defense counsel asked to cease representing him so that Castro could go forward and to proceed in the manner that he wished.

In *McCoy*, the trial court, although fully aware that the defendant wanted to maintain his innocence, refused to allow defense counsel to withdraw <u>and</u> also allowed defense counsel to ignore the McCoy's wishes <u>and tell the jury</u> that the defendant caused the death of three people. *McCoy*, 138 S.Ct. at 1505.

In contrast, Castro wanted to testify on his own behalf and proclaim his innocence and that is exactly what the Court allowed him to do through his narrative testimony and by conducting his closing.[4] Because defense counsel had "a firm factual basis" to believe that

---

[4] As noted by the United States, the Third Circuit approved a similar procedure in an unpublished opinion. In *United States v. Felder*, the Third Circuit held that there was no abuse of discretion when the trial court did not allow defense counsel, who had reason to believe the defendant was going to commit perjury, to withdraw fully from the representation. 389 F. App'x 111, 116-17 (3d Cir. 2010). Instead, the trial court directed defense counsel "to present Felder's testimony in narrative form and was instructed to make no reference to statements that could be false in closing argument; *see also* ABA Model R. Prof. Conduct 3.3, comments 6-7.

9

Castro's testimony would be perjurious, the Court had little choice but to relieve her as counsel because the rules of professional conduct require that a lawyer not knowingly offer evidence the lawyer knows or reasonably believes will be false. Exhibit 1 at 4:15-19; 10:13-25; 11:1-5. The Court also made it clear to Castro that it would not be able to appoint new counsel at that juncture because that attorney, who would naturally have to consult with prior defense counsel regarding the case, would be placed in the same ethical dilemma as defense counsel in potentially eliciting perjurious testimony. *Id.* at 9:4-11. Castro advised the Court at the time that he understood all these considerations and asked that he be allowed to proceed *pro se* "with as much assistance from my counsel as Your Honor will permit, technical issues like objections, things like that I'm not too familiar with." *Id.* at 9:17-20. In response, the Court obliged, and in protecting Castro's right to counsel, advised defense counsel that although they would no longer be representing Castro when he delivered his testimony and closing, they would provide assistance as standby counsel on legal matters.[5] *Id.* at 12:1-13. In addition, to minimize any prejudice with the jury, the Court advised the jury that Petitioner had decided to exercise his right to offer narrative testimony and conduct his own closing. *See* Exhibit 2, at 43:8-13. Petitioner then testified in narrative form, *see* Exhibit 2, and conducted the closing.

Because Petitioner was permitted to assert his innocence before the jury and because Petitioner's counsel did not in any way concede Petitioner's guilt to the jury over his objection, the Court finds that Castro does not sufficiently rely on the right asserted in in *McCoy* and is not

---

[5] Contrary to Petitioner's assertions, counsel did not abandon Petitioner and made numerous objections during cross-examination. *See* Exhibit 2, Trial Transcript of December 21, 2011, at 111:8-10; 112-115; 121:19-25; 122:1-3; 124:21-23; 130:11-13; 131:19-25; 133:3, 17-23; 135:6-9. Thus, Castro's claim that he was "[l]eft to fend for himself" with "no legal representation whatsoever", *see* Petitioner's Brief at 2 and 4, is contrary to what occurred at trial.

able to meet the exception contained in 28 U.S.C. § 2255(f)(3) to justify the filing of his motion for relief.  The motion is therefore time-barred under § 2255(f)(1).

When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim[s], a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Didiano v. Balicki*, Civil Action No. 09–2315 (FLW), 2010 WL 1752191, at *6-7 (Apr. 29, 2010) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Here, reasonable jurists would not find the Court's procedural ruling debatable.  Accordingly, no certificate of appealability shall issue.  An appropriate Order follows.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

DATED: July 20, 2021.